**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEYAKUMAR NADARAJAH,<br>                                    Defendant. | No. 2:23-cr-891 (CCC)<br><br>Honorable Claire C. Cecchi<br><br>Motion Date:  May 14, 2025 |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL DISCLOSURE OF EXCULPATORY INFORMATION**

---

William A. Burck
Stephen M. Hauss
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
williamburck@quinnemanuel.com
stephenhauss@quinnemanuel.com

Julia S. Choe
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
juliachoe@quinnemanuel.com

*Counsel for Defendant*
*Jeyakumar "Jack" Nadarajah*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ...................................................................................................1

**DISCUSSION** ..............................................................................................................................2

    A.    The Indictment and Charges ...................................................................................2

    B.    The Government's Rule 16 Disclosures .................................................................2

    C.    The Government's Expert and Summary Witnesses ..............................................3

    D.    The Government's Representations to the Defense Regarding Expert Witnesses and Summary Witnesses ........................................................................4

**I.**    **LEGAL STANDARD** ......................................................................................................6

**II.**    **ARGUMENT** ....................................................................................................................7

    A.    The Government's Expert and Summary Witnesses Are Crucial Trial Witnesses. ................................................................................................................7

    B.    The Government Has Produced No Information Regarding Meetings with its Experts or Summary Witnesses. ........................................................................8

    C.    The Government Must Either Immediately Disclose to the Defense All Exculpatory Information or Certify That It Received No Such Information From Its Expert or Summary Witnesses ...............................................................10

**CONCLUSION** .........................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Brady v. Maryland*,
   373 U.S. 83 (1963) .................................................................................................. 6, 9

*Chavis v. North Carolina*,
   637 F.2d 213 (4th Cir. 1980) ....................................................................................... 10

*Giglio v. United States*,
   405 U.S. 150 (1972) .................................................................................................. 6

*Monroe v. Angelone*,
   323 F.3d 286 (4th Cir. 2003) ....................................................................................... 10

*Schledwitz v. United States*,
   169 F.3d 1003 (6th Cir. 1999) ..................................................................................... 6

*United States v. Frost*,
   125 F.3d 346 (6th Cir. 1997) ....................................................................................... 7

*United States v. Martin*,
   662 F. Supp. 2d 155 (D.D.C. 2009) ........................................................................ 7, 10

*United States v. Mickens*,
   Nos. 20-258, 20-462, 20-630, 2021 WL 3136083 (2d Cir. July 26, 2021) ............... 6

*United States v. Rodriguez*,
   496 F.3d 221 (2d Cir. 2007) .................................................................................... 6, 9

*United States v. Sipe*,
   388 F.3d 471 (5th Cir. 2004) ....................................................................................... 6

*United States v. Starusko*,
   729 F.2d 256 (3d Cir. 1984) ........................................................................................ 6

## **PRELIMINARY STATEMENT**

Defendant Jeyakumar "Jack" Nadarajah respectfully requests that the Court compel the Government to produce all exculpatory information that has been provided to the Government—in any format, including oral statements—by its most important witnesses: the Government's expert and summary witnesses. Mr. Nadarajah has repeatedly requested this information, and the Government has repeatedly stonewalled, forcing Mr. Nadarajah to bring this motion.

The importance of the requested information cannot be overstated. The Government has no eyewitnesses to Mr. Nadarajah's trading, no cooperating witness, and no inculpatory communications from Mr. Nadarajah. It appears that the government instead intends to present its case primarily through (1) a summary witness who will attempt to present charts depicting information about Mr. Nadarajah's trading, and (2) a paid, private expert witness who will attempt to interpret this information as being consistent with spoofing. For all intents and purposes, these two witnesses will attempt to present the government's evidence of the *actus reus* (the trading) and the *mens rea* (the expert's opinions) of Mr. Nadarajah's alleged crimes. And yet the government has provided to Mr. Nadarajah zero memoranda of interviews ("MOIs") with these witnesses, no notes of those interviews, and no exculpatory statements these witnesses have made. In response to Mr. Nadarajah's requests for any exculpatory information provided by these witnesses, the government has produced nothing. The notion that these witnesses have never uttered even a syllable of exculpatory information to the government defies experience, logic, and common sense. It is implausible at best.

Mr. Nadarajah accordingly respectfully requests that the Court issue an order compelling the government to (a) immediately disclose all exculpatory information provided by the government's expert witnesses and summary witness, or (b) certify to this Court that no such information has been provided to the prosecution team by these witnesses.

1

## DISCUSSION

### A.     The Indictment and Charges

On November 7, 2023, Mr. Nadarajah was indicted by a federal Grand Jury sitting in Newark for alleged conduct related to U.S. Treasuries securities. (ECF No. 1.) The Indictment specifically charges wire fraud (Counts 1–2), securities fraud (Counts 3–9), and securities manipulation (Counts 10–16). (*Id.* ¶¶ 26, 28, 30.)

### B.     The Government's Rule 16 Disclosures

To date, the Government has provided certain documents and information in discovery identifying potential trial witnesses. Specifically, the Government has produced MOIs for twelve potential fact witnesses in connection with Mr. Nadarajah's case file (identified by case number 3757987-MF). (Declaration of Julia S. Choe ("Choe Decl.") ¶ 2.) Five of those twelve MOIs are associated with representatives of Mr. Nadarajah's algorithmic trading counterparties, who, aside from having executed trades with Mr. Nadarajah, have no visibility into Mr. Nadarajah's conduct. (*Id.*) Further, not a single one of the Government's remaining MOIs identifies any witness who personally observed Mr. Nadarajah's order placement and cancellation during the seven sets of orders at issue in the Indictment. (*Id.*) The government has no cooperating witnesses in this case.

The Government has also disclosed and produced voluminous Rule 16 disclosures for one "expert" witness, Mr. Lawrence R. Glosten, and one summary witness, Mr. Alejandro Silva. (*Id.* ¶ 3; Ex. A, Report of Lawrence R. Glosten ("Glosten Report"); Ex. B, Declaration of Alejandro Silva ("Silva Decl.").) The Glosten Report is 8.5 pages long and attaches over 300 pages in four appendices, including Appendix B—a 291-page, multi-column list of thousands of filenames, each of which contains hundreds or thousands of rows reflecting information about market orders, modifications, and cancellations. (ECF No. 91-7.) Likewise, the Silva Declaration is four pages long and attaches approximately 700 pages in eleven lettered appendices, including the same

2

Appendix B—the 291-page, multi-column list of thousands of filenames. (ECF No. 91-6.) In addition to the reports and related appendices of Messrs. Glosten and Silva, the Government has provided additional disclosures in the form of the federal contracts for Messrs. Glosten and Silva. (Choe Decl. ¶ 9.) Critically, in the more than one thousand pages of Rule 16 disclosures provided to Mr. Nadarajah by the Government, not a single page includes a 302 report, MOI, or notes of interviews or meetings with Messrs. Glosten or Silva. The Government has produced no exculpatory information from either Mr. Glosten or Mr. Silva.

    **C.    The Government's Expert and Summary Witnesses**

Mr. Glosten's anticipated trial testimony purports to carry significant water for the Government. Specifically, Mr. Glosten purports to testify about the general nature of the U.S. Treasuries securities markets at issue and the effect of alleged "spoof" orders on such markets. (*Id.*, Ex. A, Glosten Report ¶¶ 9–13.) He also claims to identify two trading strategies allegedly used by Mr. Nadarajah, drawing conclusions as to the aggressiveness of the strategy and intent of the orders. (*Id.* at ¶¶ 14–22.) He claims that Mr. Nadarajah's orders caused other market participants to act, (*id.* at ¶¶ 23–24), and he concludes that Mr. Nadarajah's orders impacted the market price of U.S. Treasuries securities. (*Id.* at ¶¶ 25–26.) Perhaps most critically (and improperly), Mr. Glosten purports to testify that Mr. Nadarajah is guilty. Specifically, Mr. Glosten states:[1]

- "I have seen what appear to be both [spoofing and layering] in the data in this case." (*Id.* ¶ 11.)

- "[T]he Small-Side Orders [of Mr. Nadarajah] are intended to be executed and the Large-Side Orders [of Mr. Nadarajah] are not." (*Id.* ¶ 28.a.)

---

[1] Mr. Nadarajah has filed a motion to exclude such testimony. (ECF No. 78.)

3

- "[T]he Defendant was using the Large-Side Orders to induce other market participants to react either by moving the quotes, or hitting the Small-Side Orders, or cancelling Small-Side orders."  (*Id.* ¶ 28.b.)

- "This [activity by Mr. Nadarajah] has been seen in previous cases of spoofing in other markets."  (*Id.* ¶ 28.c.)

- "The trading strategy used by the Defendant appears to be designed to not fill the Large-Side Orders, but instead, use those Large-Side Orders to push the market price to get fills on the Small-Side Orders on the opposite side or encourage market participants to hit the Defendant's resting Small-Side Orders on the opposite side. Other traders who have traded in a similar pattern were spoofing to induce others to execute their smaller orders."  (*Id.* ¶ 31.)

Mr. Silva's anticipated trial testimony is also critical because the Government will seek to admit, through Silva, the Government's foundational trial exhibits—summary charts depicting information about Mr. Nadarajah's order placement and cancellation (a) during the Indictment timeframe and (b) supporting the charged counts specifically.  (*See id.*, Ex. B, Silva Decl.)  Mr. Silva's Declaration attaches summary charts of (1) sequences of order placements and cancellations, (2) the depth of order book for certain sequences, (3) associated activity in the futures markets for certain sequences, and (4) counterparty activity.

Finally, it appears that the Government previously retained an expert (who was not noticed to the defense under Rule 16 and who will be not be testifying at trial) to serve as an expert witness in this case.  (Choe Decl. ¶¶ 10–11.)  Other than a passing reference to this individual (identified in the Government's discovery as "Mr. Harris") contained in the contract for Mr. Silva, the Government has produced no information whatsoever regarding this non-testifying expert, much less exculpatory information he may have provided to the Government.  (*See id.*)

### D. The Government's Representations to the Defense Regarding Expert Witnesses and Summary Witnesses

On October 11, 2024, counsel for Mr. Nadarajah requested, with regard to Messrs. Glosten and Silva, "all memoranda of interviews and/or interview recordings," "agent or government

4

notes" from such interviews, and "prior sworn testimony." (Choe Decl., Ex. C at 3.) The Government requested the legal basis for such a request on October 11, 2024, and defense counsel provided authority that such materials were discoverable under *Brady* and *Giglio* on October 14, 2024. (*Id.* at 2.) On October 16, 2024, the Government represented to counsel for Mr. Nadarajah that "there [were not] responsive materials in [the Government's] possession at [that] time." (*Id.* at 1.)

On October 31, 2024, counsel for Mr. Nadarajah requested "the contracts used to engage both Lawrence Glosten and Alejandro Silva, along with the total sum that the government has paid to those witnesses to date." (*Id.*, Ex. D at 1.) In response, the Government asked for the legal basis for Mr. Nadarajah's request and claimed that it would "continue to comply with [its] discovery obligations." (*Id.*)

On November 11, 2024, counsel for Mr. Nadarajah again requested from the Government "[s]tatements of the government's paid witnesses along with all interview memoranda and notes reflecting any such statements" and "[c]opies of the contractual agreements between the government and its two paid experts." (*Id.*, Ex. E at 2.) On November 13, 2024, the Government provided contracts for Messrs. Glosten and Silva without providing any additional information. (*Id.* at 1.) The Statement of Work attached to the contract for Mr. Silva explained that "[Mr. Silva] will assist another expert, Mr. Harris who also will be testifying at trial." (*Id.*, Ex. F at 2.)

On November 27, 2024, counsel for Mr. Nadarajah requested "any Brady material related to Mr. Harris'[s] engagement with the government, his contract, and any materials that he has provided to the government." (*Id.*, Ex. G at 1.) On December 4, 2024, the Government responded, stating only that the Government "understand[s] and [would] continue to comply with [its]

5

disclosure obligations." (*Id.*)  Since that time, the Government has made no further disclosures regarding any of its expert or summary witnesses.

I.    **LEGAL STANDARD**

Under the Scheduling Order entered by this Court on January 29, 2024, the government was required to "provide exculpatory evidence, within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, on or before February 15, 2024." (ECF No. 28 at 1.)

The Third Circuit has long held that "[e]xculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness." *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984) (*citing Giglio v. United States*, 405 U.S. 150, 154 (1972)).  "The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007).  "When no notes are taken during a witness interview, but material information favorable to a defendant emerges, *Brady* obligates the Government to provide that information 'in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial.'" *United States v. Mickens*, Nos. 20-258, 20-462, 20-630, 2021 WL 3136083, at *7 (2d Cir. July 26, 2021) (unpublished) (*quoting Rodriguez*, 496 F.3d at 226).

Convictions have been vacated when *Brady* information relating to expert or summary witnesses is not disclosed before trial to the defense.  *See United States v. Sipe*, 388 F.3d 471, 473 (5th Cir. 2004) (affirming district court's decision to grant a new trial based on *Brady* violations where prosecution withheld, among other evidence, impeachment material for government's law enforcement expert); *Schledwitz v. United States*, 169 F.3d 1003, 1017 (6th Cir. 1999) (vacating conviction based on *Brady* violations where prosecution withheld, among other evidence,

6

impeachment material for government's expert); *cf. United States v. Frost*, 125 F.3d 346, 383 (6th Cir. 1997) (holding district court abused its discretion in failing to hold an evidentiary hearing on motion for new trial where government disclosed potential expert witness testimony in a letter, did not call the expert witness, and "[a]fter the trial, defendants learned that [the expert witness] had told the government something other than precisely what the government had represented in its letter").

To protect the constitutional rights of a criminal defendant, a court may order the government to certify that all exculpatory information has been provided to the defense. *Cf. United States v. Martin*, 662 F. Supp. 2d 155, 164 (D.D.C. 2009) (noting that "the government agreed to certify that there was no *Brady* evidence").

## II.    ARGUMENT

### A.    The Government's Expert and Summary Witnesses Are Crucial Trial Witnesses.

The government has no cooperating witnesses. There are no eyewitnesses to the alleged crimes charged in the Indictment. Indeed, there is not a single inculpatory written communication from the defendant in this entire case. In the absence of any first-hand or direct evidence against Mr. Nadarajah, the Government appears to be planning to prove its case through the trial testimony of two paid witnesses—an expert (Glosten) and summary (Silva) witness. As proof, the Government provided to the defense voluminous amounts of Rule 16 material for its expert and summary witness, respectively. (Choe Decl., Ex. A, Glosten Report; Ex. B, Silva Decl. (attaching over one thousand combined pages, including identification of specific order sequences the Government intends to put at issue, along with summary charts of (1) such sequences, (2) the depth of order book for certain sequences, (3) associated activity in the futures markets for certain sequences, and (4) counterparty activity).)

The Government's expert witness—Mr. Glosten—purports to testify regarding the general nature of the U.S. Treasuries securities markets at issue and the effect of alleged "spoof" orders on such markets. (Choe Decl., Ex. A, Glosten Report ¶¶ 9–13.) He also claims to identify two trading strategies allegedly used by Mr. Nadarajah, drawing conclusions as to the aggressiveness of the strategy and intent of the orders. (*Id.* at ¶¶ 14–22.) He claims that Mr. Nadarajah's orders caused other market participants to act, (*id.* at ¶¶ 23–24), and he concludes that Mr. Nadarajah's orders impacted the market price of U.S. Treasuries securities. (*Id.* at ¶¶ 25–26.) And most critically, Mr. Glosten purports to testify that Mr. Nadarajah is guilty. (*Id.* ¶¶ 11, 28a–c, 31.)

The Government's summary witness—Mr. Silva—purports to testify regarding summary charts depicting information about Mr. Nadarajah's order placement and cancellation (a) during the Indictment timeframe and (b) supporting the charged counts specifically. (*See* Choe Decl., Ex. B.)

Taken together, and given the Government's lack of fact witnesses, Mr. Glosten (the Government's expert witness) and Mr. Silva (the Government's summary witness) appear to be the two most important witnesses in the Government's entire case. The Government will likely use these witnesses to compensate for the lack of first-hand or direct evidence against Mr. Nadarajah—written, recorded, testimonial, or otherwise.

### B. The Government Has Produced No Information Regarding Meetings with its Experts or Summary Witnesses.

Given this context, it is highly unusual (and suspect) that the defense has received no information whatsoever—no 302s, no MOIs, no notes—regarding the Government's specific <u>meetings</u> and <u>interviews</u> with its experts (Glosten and Harris) and summary witness (Silva). While the defense has received the Government's Rule 16 disclosures regarding one expert (Glosten) and summary witness (Silva), these materials are devoid of any information regarding the

8

Government's interviews and meetings of each of these witnesses. Neither of these reports contain exculpatory information. In addition, the Government has provided no information whatsoever regarding its non-testifying expert (Harris).

In response to the Defense's repeated requests for this information, the Government has responded only with the familiar refrain: "We understand and will continue to comply with our disclosure obligations." (Choe Decl., Ex. G at 1.)

If that statement is true, it appears the Government has adopted a policy of purposefully not memorializing its interviews and discussions with its paid experts (Glosten and Harris) and summary witness (Silva). Notably, this approach differs drastically from the Government's approach toward its fact witnesses. Further, courts have routinely held that simply not writing down information does not relieve the Government of its obligations under *Brady* and, of course, this Court's Scheduling Order, as the obligations of *Brady* apply not just to "statements" but to all "information" within the possession, custody, and control of the prosecution team. *Rodriguez*, 496 F.3d at 226 ("The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form."); Scheduling Order, ECF No. 28 at 1 (requiring the Government to "provide exculpatory evidence, within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, on or before February 15, 2024.").

According to the Government, neither its experts (Glosten and Harris) nor its summary witness (Silva) has provided any information to the Government that could be exculpatory. This defies experience, logic, and common sense—it cannot be accurate.

### C. The Government Must Either Immediately Disclose to the Defense All Exculpatory Information or Certify That It Received No Such Information From Its Expert or Summary Witnesses

The Government must immediately disclose all exculpatory information to the defense provided to it [the Government] by the Government's experts and its summary witness. If it is the Government's position that its expert witnesses and summary witness have not provided <u>any</u> exculpatory information to the Government during the course of their many meetings and interviews and over the course of the Government's (a) investigation, (b) Indictment preparation, and (c) trial preparation, the Government should be ordered to certify as much. *Cf. United States v. Martin*, 662 F. Supp. 2d 155, 164 (D.D.C. 2009) (noting that "the government agreed to certify that there was no *Brady* evidence").

Ultimately, the Government's failure to disclose exculpatory information to the defense in this case regarding its crucial witnesses—its expert and summary witnesses—will jeopardize the viability of this prosecution going forward. *See, e.g., Monroe v. Angelone*, 323 F.3d 286, 291 (4th Cir. 2003) ("Significantly, the [State] suppressed several evidentiary items that would have severely damaged the credibility of [a] crucial witness. The suppression of this *Brady* evidence undermines our confidence in the verdict, and there is a reasonable probability that, had the prosecution properly disclosed exculpatory material, the jury would not have convicted"); *Chavis v. North Carolina*, 637 F.2d 213, 223 (4th Cir. 1980) ("With regard to [the Government witness's] corrected or amended statement[,] we hold that the failure to disclose it constituted a violation of the Brady rule, thus invalidating the [defendants'] convictions. As we have shown, [the government witness] was a crucial witness for the state, and his credibility was the most basic issue in the case.").

## CONCLUSION

For the foregoing reasons, Mr. Nadarajah respectfully requests that this Court (a) compel the Government to immediately disclose all exculpatory information provided by the Government's expert witnesses (Glosten and Harris) and summary witness (Silva) to the defense, pursuant to this Court's Scheduling Order and *Brady,* or in the alternative (b) certify to this Court that no such information has been provided to the prosecution team by its experts (Glosten and Harris) or its summary witness (Silva).

Respectfully submitted,

Dated: April 11, 2025            By:  /s/  *William A. Burck*

William A. Burck
Stephen M. Hauss
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
williamburck@quinnemanuel.com
stephenhauss@quinnemanuel.com

Julia S. Choe
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
juliachoe@quinnemanuel.com

*Counsel for Defendant
Jeyakumar "Jack" Nadarajah*

**CERTIFICATE OF SERVICE**

I certify under 28 U.S.C. § 1746 that on this date I caused the foregoing documents to be filed via the CM/ECF system for the U.S. District Court for the District of New Jersey, thereby effecting service on all counsel of record via electronic means.

I certify under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C. on this 11th day of April, 2025.

/s/ William A. Burck
William A. Burck