**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 2:23-cr-891 (CCC) |
| v. | Honorable Claire C. Cecchi |
| JEYAKUMAR NADARAJAH, | |
| Defendant. | |

---

## SUPPLEMENTAL BRIEFING IN RESPONSE TO JUNE 12, 2025 ORDER

---

William A. Burck
Stephen M. Hauss
Robert A. Zink
Kiersten M. Whitfield
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
williamburck@quinnemanuel.com
stephenhauss@quinnemanuel.com
robertzink@quinnemanuel.com
kierstenwhitfield@quinnemanuel.com

Julia S. Choe
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
juliachoe@quinnemanuel.com

*Counsel for Defendant*
*Jeyakumar "Jack" Nadarajah*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  ISSUES CONCERNING COUNTS 3-9 (THE "SECURITIES FRAUD" COUNTS) ........................................................................................ 1

    A.  Background ...................................................................................... 1

    B.  Issue 1:  The Government Must Elect a Single Provision of Rule 10b-5 to Proceed Under for Each of Counts 3-9. ................................ 3

        1.  Legal Standard .................................................................... 3

        2.  Argument ............................................................................ 4

    C.  Issue 2: Under a False Statements Theory, the Government Must Identify Which "Spoof Order" Forms the Basis of Liability for Each of Counts 3-9. .......... 4

        1.  Legal Standard .................................................................... 4

            i.  Fair Notice of Criminal Charges Under the U.S. Constitution ................................................................ 4

            ii.  Constructive Amendments to an Indictment ................... 5

            iii.  Duplicitous Counts ........................................................ 6

        2.  Argument ............................................................................ 7

    D.  Issue 3:  Under a Scheme Theory, the Government Must Dismiss as Multiplicitous All But Two of Counts 3-9. ................................ 10

        1.  Legal Standard .................................................................. 10

        2.  Argument .......................................................................... 11

II.  COUNTS 10-16 (THE "SECURITIES MANIPULATION" COUNTS) MUST BE DISMISSED WITH PREJUDICE. ................................................. 12

    A.  Legal Standard .............................................................................. 12

        1.  Rule 12(b) Dismissal With Prejudice ............................... 12

        2.  Rule 48(a) Dismissal With Prejudice ............................... 12

    B.  Argument ....................................................................................... 13

        1.  For the Reasons Set Forth in Mr. Nadarajah's Prior Briefing, Counts 10-16 Fail to State an Offense. .................. 13

        2.  The Subsection 78i(g) Exemption Controls. ..................... 14

        3.  The Government Failed to Brief an Argument on the Merits and Defaulted. ................................................................... 15

        4.  Under Any Reading, Subsection 78i(a)(2) Does Not Apply to Treasuries. ....................................................................... 15

        5.  The Government's Rule 48(a) Request is in Bad Faith and Serves Only to Harass Mr. Nadarajah. ................................ 17

i

6.    A Time Bar for Future Charges Is Insufficient to Protect Mr.
      Nadarajah. ................................................................................................... 19

7.    Dismissal With Prejudice Is Critical to Preserve Hyde Amendment
      Claims. ......................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*In re AT&T/DirecTV Now Sec. Litig.*,
  480 F. Supp. 3d 507 (2020) ..............................................................................................4

*Blockburger v. United States*,
  284 U.S. 299 (1932) .....................................................................................................3, 4

*Cole v. Arkansas*,
  333 U.S. 196 (1948) .........................................................................................................5

*Hamling v. United States*,
  418 U.S. 87 (1974) ...........................................................................................................3

*Hudson v. United States*,
  522 U.S. 93 (1997) ...........................................................................................................4

*LanFranco v. Murray,*
  313 F.3d 112 (2d Cir. 2002) ............................................................................................6

*Morton v. Mancari*,
  417 U.S. 535 (1974) .......................................................................................................15

*In re Richards*,
  213 F.3d 773 (3d Cir. 2000) ..........................................................................................13

*Rinaldi v. United States,*
  434 U.S. 22 (1977) .........................................................................................................13

*Russell v. United States*,
  369 U.S. 749 (1962) .....................................................................................................3, 4

*SEC v. Lek Secs. Corp.*,
  276 F. Supp. 3d 49 (S.D.N.Y. 2017) ...............................................................................4

*Stirone v. United States,*
  361 U.S. 212 (1960) .........................................................................................................5

*United States v. Adams,*
  2025 WL 978572 (S.D.N.Y. 2025) ............................................................ 12, 13, 18, 19

*United States v. Aguilar,*
  756 F.2d 1418 (9th Cir. 1985) .........................................................................................7

*United States v. Andrews,*
  681 F.3d 509 (3d Cir. 2012) ..................................................................................6, 9, 10

*United States v. Brandao,*
  539 F.3d 44 (1st Cir. 2008) ..............................................................................................6

*United States v. Brown,*
  2019 WL 1471029 (M.D. Fla. Apr. 3, 2019) ...............................................................7, 8

*United States v. Centeno,*
    793 F.3d 378 (3d Cir. 2015) ........................................................................... 9

*United States v. Chapman,*
    524 F.3d 1073 (9th Cir. 2008) ..................................................................... 20

*United States v. Chase,*
    2005 WL 3288731 (D. Vt. Nov. 30, 2005) .............................................. 5, 6

*United States v. Daraio,*
    445 F.3d 253 (3d Cir. 2006) ........................................................................... 6

*United States v. Erickson,*
    2024 WL 81290 (D.V.I. Jan. 8, 2024) ................................................... 13, 17

*United States v. Gagalis,*
    2006 WL 931909 (D.N.H. Apr. 7, 2006) .................................................... 7

*United States v. Garcia,*
    2023 WL 2691603 (D. Colo. Mar. 29, 2023) ........................................... 12

*United States v. Goodwin,*
    2004 WL 769312 (D. Mass. Apr. 12, 2004) ........................................... 7, 8

*United States v. Graham,*
    2006 WL 1720675 (E.D. Va. June 19, 2006) ............................................ 3

*United States v. Haddy,*
    134 F.3d 542 (3d Cir. 1998) ................................................................... 10, 11

*United States v. Hinestrosa,*
    2010 WL 3522972 (S.D. Fla. Aug. 12, 2010) .......................................... 15

*United States v. Kennedy,*
    682 F.3d 244 (3d Cir. 2012) ................................................................... 10, 11

*United States v. Langford,*
    946 F.2d 798 (11th Cir. 1991) ............................................................... 7, 8

*United States v. Levin,*
    973 F.2d 463 (6th Cir. 1992) ...................................................................... 12

*United States v. Mayo,*
    2015 WL 3439165 (D. Mont. May 28, 2015) ......................................... 12

*United States v. Overton,*
    2008 WL 11449319 (D. Mont. Feb. 22, 2008) ......................................... 3

*United States v. Pollen,*
    978 F.2d 78 (3d Cir. 1992) .......................................................................... 10

*United States v. Rigas,*
    281 F. Supp. 2d 660 (S.D.N.Y. 2003) .................................................. 10, 11

*United States v. Rigas,*
    605 F.3d 194 (3d Cir. 2010) ............................................................. 6, 7, 8, 9

*United States v. Root,*
 585 F.3d 145 (3d Cir. 2009) ........................................................................7

*United States v. Rossoff,*
 806 F. Supp. 200 (C.D. Ill. 1992) ...........................................................17

*United States v. Serra,*
 2007 WL 128848 (D. Mass Jan. 12, 2007) ................................................3

*United States v. Smith,*
 230 F.3d 300 (7th Cir. 2000) .....................................................................5

*United States v. Stitsky,*
 536 F. App'x 98 (2d Cir. 2013) ...........................................................10, 11

*United States v. Swetz,*
 2019 WL 545005 (D. Nev. Jan. 2, 2019), report and recommendation
 approved, 2019 WL 539022 (D. Nev. Feb. 11, 2019) ..............................12

*United States v. Walsh,*
 194 F.3d 37 (2d Cir. 1999) .........................................................................5

*United States v. Wecht,*
 2008 WL 65605 (W.D. Pa. Jan. 4, 2008) ....................................13, 17, 19

*Wesley v. Rozum,*
 2010 WL 11930116 (W.D. Pa. May 4, 2010) .............................................5

## Statutes

15 U.S.C. § 78ff(a) ..................................................................................20

15 U.S.C. § 78i(a) .............................................................................. *passim*

15 U.S.C. § 78i(g) ................................................................14, 15, 16, 17

18 U.S.C. § 3301(b) ................................................................................20

## Other Authorities

17 C.F.R. § 240.10b-5 ....................................................................1, 2, 3, 4

Fed. R. Crim P. 12(b)(3)(B)(v) ...............................................................12

Fed. R. Crim. P. 48(a) .............................................................................12

Pub. L. 105-119, Title VI § 617, 111 Stat. 2440, 2519 (1997).................20

U.S. Const. amend. V ........................................................................5, 6, 7, 9

U.S. Const. amend. VI.....................................................................4, 5, 6, 7, 9

U.S. Const. amend. XIV...........................................................................5

Defendant Jeyakumar "Jack" Nadarajah, by and through his undersigned counsel, hereby submits supplemental briefing as ordered by the Court during the June 12, 2025 hearing in this matter.  Specifically, Mr. Nadarajah submits supplemental briefing regarding: (a) whether the government must elect which prong of 17 C.F.R. § 240.10b-5 ("Rule 10b-5") it is proceeding under for purposes of Counts 3-9; (b) whether the government must identify the specific alleged "spoof" order that forms the basis of liability for each of Counts 3-9, if the government proceeds under a false statements theory; (c) whether Counts 3-9 are multiplicitous based on the government's election of which prong of Rule 10b-5 it is proceeding under; and (d) whether Counts 10-16 should be dismissed with prejudice or without prejudice.  Mr. Nadarajah addresses the first three issues in Section I and the fourth issue in Section II.[1]

## I.    ISSUES CONCERNING COUNTS 3-9 (THE "SECURITIES FRAUD" COUNTS)

### A.    Background

The Indictment alleges that, from April 2018 to May 2019, Mr. Nadarajah "placed orders to spoof and layer in the U.S. Treasuries market with the intent to manipulate the prices of U.S. Treasuries, deceive and defraud other market participants in the U.S. Treasuries market, and execute his own orders for U.S. Treasuries at favorable prices."  (ECF No. 1 ¶ 1.)  In doing this, the Indictment alleges that Mr. Nadarajah engaged in a single "spoofing and layering scheme in the cash market for U.S. Treasuries Products."  (ECF No. 1 ¶ 19.)  The Indictment describes the single scheme as having four steps:  (1) placing of one or more "Genuine Orders," which Mr. Nadarajah intended to execute; (2) placing of one or more "Spoof Orders" on the opposite side of the market, which Mr. Nadarajah did not intend to execute; (3) filling of his Genuine Orders in

---

[1]    Unless otherwise noted, (1) exhibit references herein are to the exhibits outlined in the Declaration of Julia Choe, filed concurrently herewith; and (2) all internal citations and quotations are omitted.

part or in full; and (4) canceling his Spoof Orders to avoid filling them. (*Id.* ¶ 20.) The Indictment specifies that, "[b]y placing one or more Spoof Orders . . . [Mr. Nadarajah] intended to inject false and misleading information about genuine demand [or supply] into the market and to manipulate and artificially increase [or decrease] the market price." (*Id.* ¶¶ 22, 23.)

In Counts 3-9 of the Indictment, the government has charged Mr. Nadarajah with seven individual counts of securities fraud. Each of these Counts appears to be based on a specific, singular Spoof Order, which is identified by the time when it was placed (to the microsecond)— in the second column of the chart in Paragraph 28 of the Indictment titled "On or About," which presumably references the date and time "on or about" which the alleged crime was committed. (*Id.* ¶ 28.) The final column of the chart, however, states that each Spoof Order identified in the second column was part of a group of several other Spoof Orders. (*Id.* ¶ 28 ("Description of Interstate Wire Communication" column).) Count 3, by way of example, is excerpted below:

| Count | On or about Date and Time (Eastern Time) | Security | Description of Interstate Wire Communication |
|---|---|---|---|
| 3 | May 3, 2019 at approximately 9:30:59.442637 a.m. | 10-Year U.S. Treasury | Placement of a Spoof Order to sell 400 lots (part of a group of 10 Spoof Orders to sell a total of 2,183 lots) |

*Id.* The government's unsettled charging theory in the Indictment, coupled with its conflicting explanations of that charging theory during oral argument on June 12, 2025,[2] deprives Mr. Nadarajah of fundamental notice and due process rights. As remedy, the government must:

---

[2] *Compare* Ex. 1 at 130:25-131:07 ("MR. ZINK: . . . what I heard Mr. Liolos say is that the on or about date represents the misrepresentation . . . what I understand the crime to be is the thing charged—the order charged May 3, 2019, at 9:30:59.442637 . . . . MR. LIOLOS: I think that's the misrepresentation."), *with id.* at 131:12-18 ("MS. LINGWOOD: . . . The on or about date is the date and time of the wire  . . . . It gives notice of this sequence at issue and the manipulative device. So I just want to be clear. The way counsel phrased it is not exactly what is here.").

(1)     Elect a single provision of Rule 10b-5 to proceed under for Counts 3-9: (a) the false statements theory of Rule 10b-5(b); or (b) the scheme theory of Rule 10b-5(a)&(c);

(2)     Identify which specific "Spoof Order" forms the basis of liability for each of Counts 3-9, if the government proceeds under a false statements theory; and

(3)     Elect whether to: (a) keep all 7 securities fraud counts by proceeding under a false statements theory, or (b) dismiss all but 2 securities fraud counts by proceeding under a scheme theory.

**B.     Issue 1:  The Government Must Elect a Single Provision of Rule 10b-5 to Proceed Under for Each of Counts 3-9.**

1.     <u>Legal Standard</u>

For an indictment to be valid, it must "contain[ ] the elements of the offense intended to be charged, and sufficiently apprise[ ] the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962).  If, as here, an indictment tracks the language of a statute, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense . . . with which he is charged." *Id.* at 765.

An indictment must also enable the defendant to enter a plea that will bar "any future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).  "When a single act is alleged to have violated two distinct statutory provisions, whether the provisions are in the same statute or different statutes, courts apply the test announced in *Blockburger*" to "determine whether the [charged counts] are the same offense for double jeopardy purposes." *United States v. Overton*, 2008 WL 11449319, *2 (D. Mont. Feb. 22, 2008).  The same is true where a "federal regulation contains two [or more] specific and distinct subsections outlining different offenses that are written in the disjunctive." *United States v. Graham*, 2006 WL 1720675, *2 (E.D. Va. June 19, 2006); *see United States v. Serra*, 2007 WL 128848, *2 (D. Mass Jan. 12, 2007).  Under *Blockburger*, double jeopardy is implicated where each offense "requires proof of [an element] which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

3

2.     Argument

As presently charged, Counts 3-9 fail to provide sufficient notice to Mr. Nadarajah "of the specific offense . . . with which he is charged." *Russell*, 369 U.S. at 765. Counts 3-9 charge violations of Rule 10b-5(a), (b), *and* (c). But Rule 10b-5(**b**) "requires proof of [an element] which" Rule 10b-5(**a**) and (**c**) do not—a specific false statement or omission. *Blockburger*, 284 U.S. at 304; *see In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 534 (2020) ("Unlike a misrepresentation or omission claim under Rule 10b-5(b), [a] scheme liability claim is aimed at inherently deceptive conduct and does not require a misleading statement or omission.").[3] Thus, the government attempts to charge two offenses—one under 10b-5(**a**)&(**c**) for scheme liability, and another under 10b-5(**b**) for false statements liability—in each of Counts 3-9. The government must elect a theory of liability to "sufficiently apprise[]" Mr. Nadarajah "of what he must be prepared to meet" at trial. *Russell*, 369 U.S. at 763.[4] The government must also elect a theory of liability to determine whether Counts 3-9 are duplicitous or multiplicitous.

**C.     Issue 2: Under a False Statements Theory, the Government Must Identify Which "Spoof Order" Forms the Basis of Liability for Each of Counts 3-9.**

1.     Legal Standard

i.     *Fair Notice of Criminal Charges Under the U.S. Constitution*

"Criminal defendants have the right under both the Sixth Amendment and the Due Process

---

[3]  At the June 12 hearing, the government attempted to rely on *SEC v. Lek Secs. Corp.* to support its position that it could successfully charge Rule 10b-5(a), (b), and (c) in a single count. 276 F. Supp. 3d 49 (S.D.N.Y. 2017); Ex. 1 at 56:19-25. *Lek* is inapposite, however, because the *Blockburger* analysis seeks to avoid Double Jeopardy, a concept only applicable to criminal cases. *See Hudson v. United States*, 522 U.S. 93, 99 (1997). *Lek* alleges civil securities fraud violations.

[4]  Counsel for the government has repeatedly stated that the government seeks to streamline the issues in this case for an expeditious trial. (*See, e.g.*, ECF No. 105 at 4.). In addition to providing Mr. Nadarajah with his Constitutional right to notice of the crimes with which he is charged, such an election would also certainly support the government's purported goal.

Clause of the Fourteenth Amendment to be informed of the nature of the charges with sufficient specificity to permit the preparation of a defense." *Wesley v. Rozum*, 2010 WL 11930116, at *2 (W.D. Pa. May 4, 2010); *U.S. Const. amend. VI* ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . .").

The Supreme Court has expressly held that, under the Fifth Amendment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States,* 361 U.S. 212, 217 (1960); *see Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("It is as much a violation of due process [under the Fifth Amendment] to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."). "The importance of ensuring that an indictment gives the defendant adequate notice of the charges against him cannot be understated. It implicates basic notions of due process and fairness, as well as several specific provisions of the Fifth and Sixth Amendments." *United States v. Chase*, 2005 WL 3288731, at *4 (D. Vt. Nov. 30, 2005); *see also United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (holding that the specificity requirement in an Indictment "fulfills the Sixth Amendment right to be informed of the nature and cause of the accusation . . . prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and . . . serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury."). Under the Sixth Amendment, a federal indictment must, among other things, "adequately apprise the defendant of the nature of the charges so that he may prepare a defense[] and . . . it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

  ii.  *Constructive Amendments to an Indictment*

Relatedly, the Constitution prohibits "constructive amendment." The rule against

constructive amendments "exists to preserve the defendant's Fifth Amendment right to indictment by grand jury, to prevent re-prosecution for the same offense in violation of the Sixth Amendment, and to protect the defendant's Sixth Amendment right to be informed of the charges against him. *United States v. Brandao*, 539 F.3d 44, 57 (1st Cir. 2008). A constructive amendment to an indictment occurs when, "in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense [such] that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense . . . the grand jury actually charged." *United States v. Daraio*, 445 F.3d 253, 259-60 (3d Cir. 2006).

When considering a claim of constructive amendment, "[t]he key inquiry is whether the defendant was convicted of the same conduct for which he was indicted." *Id.* at 260. "The constructive amendment doctrine . . . prohibit[s] the government from changing its approach midstream to rely on theories or evidence of which the indictment contained insufficient notice." *Chase*, 2005 WL 3288731, at *4. "A defendant is entitled to fair notice of the charges against him. If the indictment alleges specific facts and theories to support those charges, the defendant should not be placed in the precarious position of mounting a challenge to those facts, only to face contradictory facts when the state changes theories. Such a reversal by the prosecution may unfairly lead the accused to defend on too many fronts without adequate notice, to contradict himself, or to appear inconsistent." *LanFranco v. Murray*, 313 F.3d 112, 119 (2d Cir. 2002).

"A constructive amendment constitutes a per se violation of a defendant's Fifth Amendment right to a jury trial." *United States v. Andrews*, 681 F.3d 509, 529 (3d Cir. 2012).

### iii. *Duplicitous Counts*

Each count of an indictment must only charge a single offense, otherwise it is duplicitous. *See United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010) ("Duplicity is the improper joining of distinct and separate offenses in a single count.") "Duplicitous counts may conceal the specific

6

charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing." *Id.*

As the Ninth Circuit has observed, and the Third Circuit has endorsed, "duplicity [has] constitutional dimensions" and is not "a mere pleading requirement":

> The vices of duplicity arise from breaches of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count. A duplicitous indictment also could eviscerate the defendant's Fifth Amendment protection against double jeopardy, because of a lack of clarity concerning the offense for which he is charged or convicted.

*Id.* (citing and quoting *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985).)

"To determine whether a count is duplicitous, [a court] must ascertain the allowable unit of prosecution" to ensure that only one offense is charged in the count. *United States v. Root*, 585 F.3d 145, 150 (3d Cir. 2009). The unit of prosecution for securities fraud under a false statements theory—i.e. under Rule 10b-5(**b**)—is a "false statement of material fact in connection with a discrete purchase or sale of a security." *United States v. Langford*, 946 F.2d 798, 803 (11th Cir. 1991); *see United States v. Brown*, 2019 WL 1471029, at *3 (M.D. Fla. Apr. 3, 2019) (same); *United States v. Goodwin*, 2004 WL 769312, at *3 (D. Mass. Apr. 12, 2004) (holding that the unit of prosecution is the submission of a materially false Form 10-Q); *United States v. Gagalis*, 2006 WL 931909, at *2-3 (D.N.H. Apr. 7, 2006) (holding that the unit of prosecution is each distinct false statement:  a materially false press release and a materially false Form 10-Q).

   2.   Argument

To the extent the government elects to proceed under a false statements theory in Counts 3-9—i.e. under Rule 10b-5(**b**)—the government must identify the specific Spoof Order that forms the basis of liability for each of Counts 3-9. As discussed above, the unit of prosecution under a

false statements theory of securities fraud is the "false statement of material fact." *Langford*, 946 F.2d at 803; *see Brown*, 2019 WL 1471029, at *3; *see United States v. Goodwin*, 2004 WL 769312, at *3. Therefore, each of Counts 3-9 must be premised on a single "false statement of material fact" or else the count would be duplicitous because it would allege multiple offenses in the same count. *See Rigas*, 605 F.3d at 210. Here, it is undisputed that the "false statement of material fact" allegedly made by Mr. Nadarajah was the Spoof Order. Counsel for the government specifically stated at the hearing on June 12, 2025 that the Spoof Orders were the misstatements for purposes of subsection (**b**) of Rule 10b-5:

> [T]he misstatement under (b) is the spoof order itself. And that is the misleading fact here because, as the spoof order is conveyed to the market, they carry with them an intent to trade . . . . [A]n order carries this implied misrepresentation. It can be a statement that incurs liability under Section (b) of the rule.

(*See, e.g.*, Ex. 1 at 57:16-58:07; *see also id.* at 129:20-23 (THE COURT: "What is the purpose, the point, of the on or about column? MR. LIOLOS: That is the particular wire that is the misrepresentation in that execution of the scheme.").)

The government must therefore identify one and only one Spoof Order that constitutes the basis for liability under each of Counts 3-9—if it elects to proceed under a false statements theory. The government appears to have done just that by identifying in the Indictment a single Spoof Order for each of Counts 3-9 in the "on or about" column of the chart in Paragraph 28. (*See* ECF No. 1 ¶ 28.)

However, the government's identification of several additional Spoof Orders in the final column of the chart in Paragraph 28, coupled with its confusing description of its charging theory

at the June 12, 2025 hearing,[5] makes Mr. Nadarajah concerned that the government may (a) rely on multiple Spoof Orders for each of Counts 3-9 or (b) reserve the option to change which Spoof Order forms the basis of each Count at trial.[6]  These positions must be rejected.  The former position would lead to duplicitous counts, *see Rigas*, 605 F.3d at 210, and the latter position would result in a constructive amendment of the Indictment, *see Andrews*, 681 F.3d at 529; *United States v. Centeno*, 793 F.3d 378, 387 (3d Cir. 2015).

To the extent the government elects to proceed on a false statements theory of securities fraud, it must identify a single Spoof Order that constitutes the basis for liability under each of Counts 3-9.  Failing to do so would endanger Mr. Nadarajah's Fifth and Sixth Amendment rights to have knowledge of the charges against him, as well as his Fifth Amendment protection against double jeopardy (because of a lack of clarity concerning the offense for which he is charged).  The Court must not let that happen.

In sum, the specific concern here is that the government, despite having identified a specific order in the Indictment's "On or About" column setting forth the precise conduct underpinning the charged offenses in Counts 3-9, will change its theory of liability shortly before trial, or even mid-trial, based on the defense case and select an order different from the one identified in the "On or About" column in the Indictment.  If this happens, a constructive amendment to the Indictment will occur, the charges will be rendered duplicitous, and a significant Constitutional violation

---

[5]  *See* Ex. 1 at 131:16-18 (stating that the Spoof Order in the "on or about" column "gives notice of this sequence at issue and the manipulative device").

[6]  For example, say an indictment charged a single count of making a false statement to law enforcement in violation of 18 U.S.C. § 1001, alleging that the defendant falsely told federal agents that he was unemployed, and that the statement was part of a wider interview involving 10 other allegedly false statements.  If it became clear at trial that the defendant in fact had been unemployed at the time and that the specific charged statement was not false, the government would not be permitted to argue to the jury that it could nonetheless convict the defendant so long as they found that any one of the other 10 statements were untrue.

resulting in automatic reversal will occur. *See Andrews*, 681 F.3d at 529 ("A constructive amendment constitutes a per se violation of a defendant's Fifth Amendment right to a jury trial.").

The defense simply requests confirmation from the Government that, in the event the government proceeds to trial under 10b-5(b) for Counts 3-9, the singular order identified in the "On or About" column of the Indictment is the operative false statement for each respective count.

**D.      Issue 3:  Under a Scheme Theory, the Government Must Dismiss as Multiplicitous All But Two of Counts 3-9.**

1.      Legal Standard

An indictment is multiplicitous if it "charg[es] a single offense in separate counts of an indictment" and thus "risks subjecting a defendant to multiple sentences for the same offense." *United States v. Kennedy*, 682 F.3d 244, 254-55 (3d Cir. 2012).  To determine whether multiple counts of an indictment improperly charge the same offense, a court "must ascertain the allowable unit of prosecution."  *United States v. Pollen*, 978 F.2d 78, 85 (3d Cir. 1992).

Where the government elects to proceed under a scheme theory of securities fraud—*i.e.*, under Rule 10b-5(a)&(c)—courts have held that the allowable unit of prosecution is the class of security that is the subject of the scheme.  *See, e.g.*, *United States v. Haddy*, 134 F.3d 542, 549 (3d Cir. 1998) (finding that each of the three securities-fraud counts in that indictment "properly charged a manipulation of the securities of each of the three separate companies"); *United States v. Stitsky*, 536 F. App'x 98, 103-04 (2d Cir. 2013) (holding that "transactions in separate securities constitute separate offenses" under Section 10(b), such that two securities fraud counts were not multiplicitous because they charged fraud in connection with two different issuers' stock); *United States v. Rigas*, 281 F. Supp. 2d 660, 667 (S.D.N.Y. 2003) (finding that "fraudulent transactions involving different securities, even if made with the intent of furthering a single overall conspiracy, may establish the basis for separate counts of an indictment under Section 10(b) and Rule 10b-5").

2.    Argument

If the government proceeds under a scheme theory—*i.e.*, under Rule 10b-5(**a**)&(**c**)—the government must dismiss as duplicitous all but two of Counts 3-9.  The government may maintain one scheme count related to the 5-Year U.S. Treasury note, and one scheme count related to the 10-Year U.S. Treasury note.[7]

The government must dismiss all but two Counts because the unit prosecution under a scheme theory of securities fraud is the class of security that is the subject of the fraud.  *See Haddy*, 134 F.3d at 549; *Stitsky*, 536 F. App'x at 103-04; *Rigas*, 281 F. Supp. 2d at 667.  Here, Counts 3-9 only concern two classes of securities:  the 5-Year U.S. Treasury note; and the 10-Year U.S. Treasury note.  (*See* ECF No. 1 ¶ 28.)  Therefore, all but two of Counts 3-9 are multiplicititous under a scheme theory.  *See Kennedy*, 682 F.3d at 254-55; *cf. Stitsky*, 536 F. App'x at 103-04.

The Court should reject the government's contention that the proper unit of prosecution under a scheme theory of securities fraud is the spoofing sequences summarized in the final column of the chart in Paragraph 28.  (*See* ECF No. 48 at 10-15; Ex. 1 at 131:16-18.)  Not only is such a position contrary to the language of the statute and rule, as well as case law interpreting them (as addressed in Mr. Nadarajah's brief on this issue, *see* ECF No. 52 at 6-7), but the position is contrary to how the Indictment pleads the scheme.  The Indictment pleads a single "spoofing and layering scheme in the cash market for U.S. Treasuries Products," which lasted from April 2018 to May 2019.  (ECF No. 1 ¶¶ 1, 19.)  The government should not now be allowed to allege that each of the seven enumerated episodes in Counts 3-9 constitute separate schemes.  Instead, the Court should limit the government to two, non-multiplicitous counts.

---

[7]  If the government elects to proceed under a false statements theory in Counts 3-9—*i.e.*, under Rule 10b-5(**b**)—the government may pursue all seven Counts, so long as it identifies the specific Spoof Order that forms the basis of liability for each of Counts 3-9.  *See supra* at 4.

## II.    COUNTS 10-16 (THE "SECURITIES MANIPULATION" COUNTS) MUST BE DISMISSED WITH PREJUDICE.

### A.    Legal Standard

#### 1.    Rule 12(b) Dismissal With Prejudice

A dismissal with prejudice under Rule 12(b) is appropriate when the court has reached "an adjudication on the merits, in favor of the defendant." *United States v. Mayo*, 2015 WL 3439165, at *3 (D. Mont. May 28, 2015); *see* Fed. R. Crim P. 12(b)(3)(B)(v).  When the court decides that, as a matter of law, the conduct outlined in the indictment is not criminal, the court reaches an adjudication on the merits in favor of the defendant and dismissal with prejudice is warranted.  *See United States v. Levin,* 973 F.2d 463, 469 (6th Cir. 1992) (affirming dismissal with prejudice where "government was, as a matter of law, incapable of proving beyond a reasonable doubt the requisite intent required to convict"); *United States v. Garcia*, 2023 WL 2691603, at *4 (D. Colo. Mar. 29, 2023) (dismissing with prejudice two counts of an indictment where government failed to state an offense); *United States v. Swetz*, 2019 WL 545005, at *4 (D. Nev. Jan. 2, 2019), *report and recommendation approved*, 2019 WL 539022 (D. Nev. Feb. 11, 2019) (dismissing with prejudice three counts that were barred by statute of limitations).

#### 2.    Rule 48(a) Dismissal With Prejudice

Rule 48(a) of the Federal Rules of Criminal Procedure allows the government to dismiss an indictment only "with leave of court."  Although Rule 48(a) dismissals are typically granted *without* prejudice, "if appropriate in light of the purposes of Rule 48(a), a court can grant the motion on the condition that dismissal be *with prejudice*—ensuring that the charges, once dropped, cannot be resurrected."  *United States v. Adams*, 2025 WL 978572, at *20 (S.D.N.Y. 2025). "[D]istrict courts have dismissed prosecutions with prejudice, even when the government seeks dismissal without it, to protect defendants from the unwarranted or inappropriate threat of re-

indictment." *Id.* & n.33 (collecting cases); *United States v. Wecht*, 2008 WL 65605, at *4-5 (W.D. Pa. Jan. 4, 2008) (dismissal with prejudice where government sought dismissal without prejudice).

Rule 48(a) is designed to ensure against prosecutorial bad faith and to protect defendants from prosecutorial harassment. *Rinaldi v. United States*, 434 U.S. 22, 29 & n.15 (1977) ("The principal object of the leave of court requirement is apparently to protect a defendant against prosecutorial harassment."); *United States v. Erickson*, 2024 WL 81290, at *5 (D.V.I. Jan. 8, 2024) (court may deny a Rule 48(a) dismissal as "clearly contrary to manifest public interest" with "a finding of prosecutorial bad faith"); *In re Richards*, 213 F.3d 773, 788 (3d Cir. 2000) (courts may protect important rights in making a decision on Rule 48(a) motions, including the right "of the defendant to not be harassed by repeated prosecutions that are dismissed before jeopardy attaches"). Accordingly, "in light of the purposes of Rule 48(a)," *Adams*, 2025 WL 978572 at *20, and as outlined in the defense's Partial Opposition to the Government's Motion to Dismiss, (ECF No. 104 at 6-8), courts may dismiss an indictment with prejudice under Rule 48(a) where the Government acted in bad faith or to protect a defendant against prosecutorial harassment. *See Erickson*, 2024 WL 81290, at *5 (bad faith); *Wecht*, 2008 WL 65605 at *6 (avoid harassment).

## B.    Argument

### 1.    For the Reasons Set Forth in Mr. Nadarajah's Prior Briefing, Counts 10-16 Fail to State an Offense.

As explained in detail in Mr. Nadarajah's (a) motion to dismiss with prejudice and (b) partial opposition to the government's motion to dismiss without prejudice, the Indictment alleges misconduct relating only to U.S. Treasury securities, which are explicitly exempt from 15 U.S.C. § 78i(a). (*See* ECF Nos. 92, 104.) Because Counts 10-16 are based solely on alleged violations of 15 U.S.C. § 78i(a)(2), Counts 10-16 must be dismissed with prejudice because they fail to state an offense. *Id.* Simply put, the conduct charged in Counts 10-16 is not a crime.

2.    The Subsection 78i(g) Exemption Controls.

At the June 12 hearing, the government asserted that it has a reading of Section 78i that *would* criminalize Mr. Nadarajah's conduct and allow Counts 10-16 to survive. *See* Ex. 1 at 143:17-145:16. But the government's purported reading ignores the subsection 78i(g) exemption, which unequivocally exempts U.S. Treasury securities from the reach of subsection 78i(a)(2).

According to the government, Section 78i(a)(2) *does* apply to government securities, like U.S. Treasury securities, because subsection 78i(a)(1) specifically *excludes* government securities from its ambit, whereas subsection (a)(2) does not. *See* 15 U.S.C. § 78i(a)(1) (stating that it applies to "any security other than a government security"); ECF No. 105 at 4 n.1. In other words, the government contends that Congress intended for subsection 78i(a)(2) to apply to government securities because Congress did not expressly include the language "other than a government security" in subsection (a)(2), as it did for (a)(1). The government argues that because the "other than a government security" language was added to subsection (a)(1) with the passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") in 2010, Congress must have intended to implicitly extend the reach of subsection (a)(2) to government securities.

The government's analysis completely ignores the subsection 78i(g) exemption. By its plain terms, subsection 78i(g) exempts U.S. Treasury securities from the provisions of subsection 78i(a). Subsection 78i(g) has existed in some form[8] since the Securities Exchange Act of 1934 was first passed, and it has always exempted government securities from the provisions of subsection 78i(a). It was also left untouched by Dodd-Frank. Nowhere in the legislative history of the statute does Congress express any intent to make subsection 78i(a) applicable to government securities. Absent a clear legislative intent to repeal subsection 78i(g), the exemption must control

---

[8]   Subsection 78i(g) was originally in the statute as subsection 78i(f).

because it does not conflict with any other portion of Section 78i.  *Morton v. Mancari*, 417 U.S. 535, 550 (1974) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.")  Thus, the subsection 78i(g) exemption applies.

3.    The Government Failed to Brief an Argument on the Merits and Defaulted.

The government relegated its written argument on this issue to a footnote in its reply brief, (ECF No. 105 at 4 n.1), and, in so doing, procedurally defaulted.  *United States v. Hinestrosa*, 2010 WL 3522972, at *2 (S.D. Fla. Aug. 12, 2010) ("The government did not file a response, and the district court granted the [defendant's] motion, finding that the motion could be granted by default given the government's failure to respond . . . .").  If the government was confident that its so-called "colorable" argument has merit, (*see* ECF No. 105 at 4), it would have set forth its position in a responsive brief to Mr. Nadarajah's motion to dismiss.  It did not do so.  Accordingly, the Court should grant Mr. Nadarajah's motion to dismiss with prejudice under Rule 12(b).

4.    Under Any Reading, Subsection 78i(a)(2) Does Not Apply to Treasuries.[9]

It is clear that the Government has not meaningfully analyzed the Dodd-Frank Amendments it relies upon.  The proper analysis of the Dodd-Frank Amendments confirms that subsection 78i(a)(2) does *not* apply to U.S. Treasury securities, and, in fact, demonstrates that Congress actually intended to include the "other than a government security" language in *all subsections* of subsection 78i(a), including subsection (a)(2).  This analysis proceeds in four steps:

**Step One**: Before Dodd-Frank, subsections 78i(a)(2) through (a)(5)—but not (a)(1) and (a)(6)—referenced another statute: Section 206B of the Graham-Leach-Bliley Act.  *See* Ex. 2;

---

[9]  If the government intends to fully brief the substance of its argument for the first time in response hereto, Mr. Nadarajah respectfully requests the opportunity to reply to any argument the government may advance.

**Step Two**:  In passing Dodd-Frank, Congress repealed Section 206B of the Graham-Leach-Bliley Act and thus had to remove any reference to it in subsections 78i(a)(2) through (5).  *See* Ex. 3 at 1, Section 762.  Congress did so by entirely replacing the existing language in subsections 78i(a)(2) through (5) with new subsections.  *See id.* at 2, Section 762(d). Congress did not need to remove such references in subsections (a)(1) and (a)(6) and therefore left them the same;

**Step Three**:  Also in passing Dodd-Frank, Congress expanded the anti-fraud provisions of the Exchange Act by making subsection 78i(a) applicable to securities other than those registered on a national exchange.  *See* Ex. 4, Section 929L.  But critically, in so doing, Congress carved out government securities from the reach of subsection 78i(a) by adding "other than a government security" to *all subsections* of subsection 78i(a)—including subsection 78i(a)(2).  *See id.*; and

**Step Four**:  Congress employed two different effective dates for the two amendments discussed in Steps Two and Three.  The repeal of Section 206B took effect a year after Dodd-Frank was passed, but the "other than a government security" language was added the day after Dodd-Frank was passed.  *Compare* Ex. 5, Section 774 (effective date provision applicable to repeal of Section 206B) *with* Ex. 6, Section 4 (effective date provision applicable to addition of "other than a government security").  When the provisions repealing Section 206B took effect, the drafters apparently forgot to incorporate the "other than a government security" language that was intended to apply to *all subsections* of subsection 78i(a).

It is clear that the omission of the "other than a government security" language in subsection 78i(a)(2) is a scrivener's error caused by the massive scope of Dodd-Frank and an oversight in the effective dates of the two Section 78i amendments.  The omission does *not* reflect an intentional decision to override the exemption for government securities in subsection 78i(g), nor does the omission reflect an intention to extend subsection 78i(a)(2) to U.S. Treasury securities

16

and other government securities. Indeed, for an entire year, subsection 78i(a)(2) reflected Congress's true intent—both in its careful carve out of government securities in passing the Dodd-Frank amendments and its original exemption of government securities in subsection 78i(g). *See* Ex. 7. Congress sometimes, in the words of the government, "makes sloppy statutes." Ex. 1 at 156:18.[10] But sloppy drafting here serves only to buttress Mr. Nadarajah's argument, not the government's. Government securities, including U.S. Treasury securities, were never supposed to be subject to any of the provisions of subsection 78i(a).

5.    The Government's Rule 48(a) Request is in Bad Faith and Serves Only to Harass Mr. Nadarajah.

Because it cannot win on the merits, the government has attempted to employ a procedural device to avoid a judicial finding that it charged Mr. Nadarajah with a crime that he could not have committed: a Rule 48(a) motion to dismiss without prejudice. Such a tactic constitutes bad faith and serves only to harass Mr. Nadarajah with the threat of re-indictment. As such, the indictment must be dismissed with prejudice. *See Erickson*, 2024 WL 81290, at *5 (dismissal with prejudice for bad faith); *Wecht*, 2008 WL 65605 at *6 (dismissal with prejudice to avoid harassment).

The government's bad faith conduct is first illustrated by its vague[11] and ever-changing justifications for its Rule 48(a) dismissal. The government's initial Rule 48(a) motion failed to articulate concrete reasons for dismissal, relying on a vague "interest of justice" rationale. (ECF No. 100 at 1.) Then, in its reply, during the June 10 telephonic conference, and during the June 12 hearing, the government jettisoned its "interest of justice" rationale, stating instead that it

---

[10]  Transcript erroneously states "mixed lobby statutes." *See* Ex. 1 at 157:1-2 for clarification.

[11]  The government's vague reasons for seeking dismissal alone would justify dismissal with prejudice. *See United States v. Rossoff*, 806 F. Supp. 200, 202 (C.D. Ill. 1992) ("If the court finds that the Government has offered a vague reason for its motion to dismiss an indictment without prejudice, it may dismiss the indictment with prejudice.").

wanted to dismiss for the sake of judicial economy. *See, e.g.*, Ex. 1 at 155:14-15; ECF No. 105 at 4. If that were true, the government would have meaningfully engaged in dismissal negotiations with defense counsel *before* filing its Rule 48(a) motion. It did not do so. When Mr. Nadarajah indicated that he might agree to dismissal without prejudice if the government would promise not to harass him with future charges, the government did not respond. (ECF No. 104-1 at ¶¶ 2-3.) It simply filed its Rule 48(a) motion.

Adding to its bad faith conduct, the government grossly miscited several cases in its Rule 48(a) motion in an apparent attempt to convince the Court that it *must* grant the government's motion *without prejudice* even though the law says no such thing. (*See* ECF No. 104 at 6 n.2 (outlining cases miscited by the government)). Indeed, in a recent high-profile case where this exact issue arose, the court explicitly stated that "Rule 48(a) requires more of a court than to 'serve merely as a rubber stamp for the prosecutor's decision.'" *Adams*, 2025 WL 978572 at *14. The law is clear: while it is the exceptional case where a court may disagree with the government as to *whether* a case may be dismissed under Rule 48(a), the court in every case has the discretion to determine *how* the charges are dismissed. *See* Ex. 1 at 170; *Adams*, 2025 WL 978572 at *20 n.33 (collecting cases—including three from the Third Circuit—where courts dismissed indictments with prejudice under Rule 48(a) where the government moved to dismiss without prejudice).

The government's bad-faith conduct is also evidenced in its refusal to engage in meaningful negotiations over how to dismiss Counts 10-16 while also protecting Mr. Nadarajah's rights. First, the government refused to dismiss the Counts with prejudice (or find an otherwise acceptable dismissal) following the June 10 conference with the Court, where the Court suggested that government counsel seek approval to dismiss with prejudice given the statute of limitations issues discussed *infra* at 19. To make matters worse, the government then tried to sidestep the issue

altogether, stating that dismissal of Counts 10-16 was simply "not an issue the Court needs to resolve prior to trial or at Thursday's hearing." Ex. 8 at 2. Then, after the June 12 hearing, the government again refused to negotiate in good faith regarding a dismissal that would adequately protect Mr. Nadarajah's rights. The government simply dismissed Mr. Nadarajah's requests for a written non-prosecution agreement and letters to FINRA and SEC, stating that such requests were "different from what [Mr. Nadarajah] previously proposed." Ex. 9 at 1. The government is wrong. At the June 12 hearing, the defense stated that it would seek "a non-prosecution agreement for the seven counts at issue at the very, very least," and that "[t]here might be additional things that [the defense] would ask the department to do." Ex. 1 at 175:12-17. The defense thereafter asked the government for exactly that: (1) a non-prosecution agreement; and (2) one additional minor request—letters to FINRA and SEC stating that the government would not recharge Mr. Nadarajah under subsection 78i(a)(2) for conduct involving U.S. Treasury securities.

There are only two logical explanations for the government's behavior. The first is that the government seeks "to allow the specter of future prosecution on the dismissed counts to hang over [Mr. Nadarajah's] head," *Wecht*, 2008 WL 65605 at *6, thus harassing him. And the second is that the government wants to avoid the knock-on effects that an adjudication on the merits would have on another case, *United States v. Forbes*, No. 22-cr-97 (E.D.N.Y.), where the defendant pleaded guilty to violating Section 78i(a)(2) based on trading U.S. Treasuries. Under this possible explanation, the government would be seeking to avoid admitting to Mr. Forbes that it negotiated a plea agreement with him for non-criminal conduct. Under either scenario, dismissal with prejudice is warranted "in light of the purposes of Rule 48(a)." *Adams*, 2025 WL 978572 at *20.

      6.   <u>A Time Bar for Future Charges Is Insufficient to Protect Mr. Nadarajah.</u>

The government's bad faith conduct makes clear that the statute of limitations cannot sufficiently protect Mr. Nadarajah from harassment, and the Court must grant dismissal with

prejudice.  The statute of limitations for violations under 15 U.S.C. § 78ff(a) is six years.  18 U.S.C. § 3301(b).  Counts 10-16 allege violations of Section 78ff(a).  (ECF No. 1.)  The relevant period alleged in the indictment is April 2018 to May 2019, and each of Counts 10-16 is based on conduct from May 2019—specifically, May 3, May 8, May 9, and May 10.  (ECF No. 1 ¶¶ 1, 30.)  Thus, the statute of limitations for the conduct underlying Counts 10-16 ran no later than May 10, 2025.  Indeed, the government admits that the statute of limitations has run.  *See* Ex. 1 at 160:21-22.

And yet, the government refuses to dismiss the Counts with prejudice.  At the June 12 hearing, the government repeatedly refused to answer the Court's direct questions regarding why Counts 10-16 should not be dismissed with prejudice given that they are time-barred.  *See generally*, *id.* at 160:13-24; 162:5-18; 163:9-164:1, 166:13-19.  This refusal alone is sufficient to show that the dismissal must be *with prejudice* to avoid further gamesmanship by the government.

In sum, the government's refusal to offer *any* assurances that it will not re-prosecute Mr. Nadarajah under subsection 78i(a)(2) for the conduct alleged in Counts 10-16, coupled with the government's refusal to dismiss the Counts with prejudice, has only one interpretation:  the government will not rule out the possibility that it will re-charge Mr. Nadarajah.  The Court must therefore protect Mr. Nadarajah against this threat by dismissing the Counts with prejudice.

### 7. Dismissal With Prejudice Is Critical to Preserve Hyde Amendment Claims.

The 1997 Hyde Amendment allows federal courts to award attorney's fees and litigation expenses to criminal defendants where, as relevant here, the government's position in its criminal prosecution was frivolous.  Pub. L. 105-119, Title VI § 617, 111 Stat. 2440, 2519 (1997).  To bring a Hyde Amendment claim, a defendant must be a "prevailing party," such that he "gained by judgment or consent decree a material alteration of [his] legal relationship" with the government.  *United States v. Chapman*, 524 F.3d 1073, 1089 (9th Cir. 2008).  Thus, Mr. Nadarajah requires a dismissal with prejudice to protect his ability to pursue such a claim.

Respectfully submitted,

Dated: June 23, 2025                    By:  /s/  William A. Burck
                                             William A. Burck
                                             Stephen M. Hauss
                                             Robert A. Zink
                                             Kiersten M. Whitfield
                                             QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                             1300 I Street NW, Suite 900
                                             Washington, DC 20005
                                             (202) 538-8000
                                             williamburck@quinnemanuel.com
                                             stephenhauss@quinnemanuel.com
                                             robertzink@quinnemanuel.com
                                             kierstenwhitfield@quinnemanuel.com

                                             Julia S. Choe
                                             QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                             865 South Figueroa Street, 10th Floor
                                             Los Angeles, CA 90017
                                             (213) 443-3000
                                             juliachoe@quinnemanuel.com

                                             *Counsel for Defendant*
                                             *Jeyakumar "Jack" Nadarajah*

## <u>CERTIFICATE OF SERVICE</u>

I certify under 28 U.S.C. § 1746 that on this date I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of New Jersey, thereby effecting service on all counsel of record via electronic means.

I certify under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C. on this 23rd day of June, 2025.

*/s/  William A. Burck*
William A. Burck